

FILED
2007 Jan-17  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY BENTON, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | CV-05-LSC-02295-W |
| ] | |
| MERCEDES-BENZ U.S. ] | |
| INTERNATIONAL, INC., ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Court has for consideration a motion for summary judgment, which

was filed by defendant Mercedes-Benz U.S. International, Inc. ("Mercedes"),

on August 30, 2006.  (Doc. 19.)  Plaintiff Timothy Benton sued Defendant for

violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et.*

*seq.*, and invasion of privacy under Alabama law.  (Doc. 1.)  This cause is

currently set for a non-jury trial, and Mercedes has moved for summary

judgment on all of Plaintiff's claims.  The issues raised in Defendant's motion

for summary judgment have been briefed by both parties and are now ripe for

decision.   Upon full consideration of the legal arguments and evidence presented by the parties, Defendant's motion for summary judgment will be granted in all respects.

II.    Facts.[1]

Mercedes-Benz U.S. International, Inc., operates a vehicle assembly facility in Vance, Alabama.   Plaintiff Timothy Benton was employed by Mercedes on January 2, 2001, to work at the Vance facility as a production team member.   When he was hired, Mr. Benton received a copy of the team member handbook, which described Mercedes' FMLA policy and short term disability (STD) policy.

Plaintiff testified that he hurt his back in July 2005.   He called in to work on Friday, July 22, 2005, and reported that he could not work due to back pain.   Dr. Fred Yerby, Plaintiff's personal physician, examined Mr. Benton on July 26, 2005; diagnosed him with a lumbar strain; and wrote that

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.   All reasonable doubts about the facts have been resolved in favor of the nonmoving party.   *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).   These are the "facts" for summary judgment purposes only.   They may not be the actual facts.   *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff should be excused from work from July 22 through July 26, 2005.

Mr. Benton visited Dr. Yerby again on August 1, 2005.  The doctor subsequently faxed Mercedes a letter on August 3, 2005, which stated:

> Timothy Benton has been under my care since 7/26/05 for a lumbar strain.  He is unable to work due to the pain and spasms in his back.  I have scheduled him for an MRI for Friday, August 5, 2005 and we will reassess his work status once the MRI has been done.

Dr. Yerby faxed another letter to Mercedes on August 24, 2005, which stated that Plaintiff was "tentatively" released to work on August 15, and was "totally and continuously disabled to work from 7/22/05 through 8/14/05."

Prior to Mr. Benton's return to work, Carol Davis, Mercedes' Medical Specialist, was informed that Plaintiff's race car was seen competing in a race the weekend of July 30, 2005, a time when Mr. Benton was off work for alleged back pain.  An investigation was conducted and an internet posting was found stating that Mr. Benton finished 18th in the "Super Late Model Feature Race" at Columbus Raceway.  When Mr. Benton was questioned about the race, he said a friend drove his car.  Mercedes elected not to take

disciplinary action at that time.  Plaintiff returned to work on August 15, and he worked through August 19, 2005.

The following Monday, August 22, 2005, Mr. Benton visited Dr. Rick McKenzie, a neurosurgeon.  Dr. McKenzie issued a return to work slip for Mr. Benton on August 24, 2005, which provided that Plaintiff could begin light duty work on September 7, 2005, with the following restrictions: "no repetitive flexion, no static flexion, no lifting greater than 25 pounds, no lifting floor to waist, ok to do desk work or to do sweeping and do fine movements of hands."  Mercedes informed Mr. Benton that they did not have any such light duty work available.

On September 7, 2005, Dr. McKenzie wrote that he was releasing Plaintiff to full duty work on September 19, and to light duty on September 8, 2005, with the following restrictions: "no repetitive flexion, no static flexion, no lifting greater than 25 #, no lifting floor to waist greater than 10 #, ok to do desk work, sweep and fine movement of hands."  Mercedes maintains that there was no such light duty work available.

Following Mr. Benton's continued absence from work, Ms. Davis says she reviewed his claim for STD benefits and became suspicious because of

the seemingly excessive length of time taken for his condition and the previous report that Plaintiff may have been racing a car while he was allegedly unable to work.   After consultations with Mercedes' STD Committee, Ms. Davis hired RAN, Inc., Investigative Services ("RAN") to conduct surveillance of Mr. Benton.  On Saturday, September 10, 2005, RAN videotaped Plaintiff operating a backhoe, carrying and climbing a ladder, and shoveling dirt in his yard.  The STD Committee at Mercedes reviewed the videotape and referred it to Human Resources.   Human Resources concluded that Mr. Benton had performed activities outside the scope of his doctor-mandated physical job restrictions, which he was then using as an excuse from work and in order to secure STD benefits.   Paul Grimes, Assistant Manager-Team Relations, recommended that Plaintiff be terminated for falsifying the reason for his absence while attempting to draw STD pay, and that recommendation was approved.

Mr. Benton returned to work on September 19, 2005.  On that day, Mr. Grimes and Brent Winter, Mercedes' Team Relations Representative, met with Plaintiff and informed him that he was being terminated.   A letter explained the alleged reason for the decision:

> You have been off work because you are under a
> physician's care with multiple restrictions for a back
> injury.  [Mercedes] has undisputed proof and
> irrefutable evidence that on September 10, 2005, you
> violated your restrictions while attempting to draw
> Short Term Disability Pay.   As a result, your
> employment at [Mercedes] is hereby terminated.

Mr. Benton subsequently filed this lawsuit for invasion of privacy and
violations of FMLA.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The party moving for summary judgment "always bears the initial
responsibility of informing the district court of the basis for its motion, and
identifying those portions of [the evidence] which it believes demonstrate
the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,
477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting
evidence showing that there is no genuine dispute of material fact, or by
showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.    Family Medical Leave Act.

In his Complaint, Plaintiff claims that Defendant violated his rights under the FMLA by never approving or denying his FMLA leave, requiring him

to "call-in to work everyday [sic]" while he was off work due to his back pain, and by terminating him in retaliation for requesting and/or taking FMLA leave.  (Doc. 1 ¶¶ 21-22.)  Mercedes contends that Plaintiff's FMLA claims should be dismissed.

"The FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001).  "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id*. at 1207.  "In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Id*.

1.    Interference.

In his response to summary judgment, Mr. Benton argues that Mercedes interfered with his rights under the FMLA by failing to place him on "FMLA leave" and requiring him to call in to work when it is undisputed that he worked the requisite number of hours to qualify for FMLA leave and he had a serious health condition.  (Doc. 23 at 17-18.)  Plaintiff also alleges that Mercedes violated FMLA because it did not advise him of his entitlement to FMLA leave and did not  "accommodate" the restrictions his physicians imposed and allow him to come back to work before he was cleared to return to full duty.[2]  (*Id*. at 16-17.)

Yet, the following facts are also undisputed: (1) Mr. Benton applied for STD but never applied for FMLA leave while off work for his alleged back pain (Pl. Dep. at 250); (2) upon employment, Plaintiff was given a handbook describing Mercedes' FMLA and STD policies (Doc. 20 at 3 ¶¶ 3-4; Doc. 23 at

---

[2]Plaintiff does not argue in his response memorandum that Mercedes failed to reinstate him to his former or an equivalent position when it terminated his employment on September 19, 2005.  Therefore, to the extent Plaintiff's complaint can be construed to make an interference claim for failure to reinstate, that claim has been abandoned.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  Moreover, even if such a claim were before this Court, there is insufficient evidence in the record to create an issue of fact for trial.

2 ¶¶ 3-4; Pl. Dep. at 99-100, 167-68); (3) Plaintiff took all the leave he requested; and (4) when physicians released Mr. Benton to work full duty, Mercedes allowed him to return to work (Doc. 20 at 11-12 ¶¶ 48, 53; Doc. 23 at 5 ¶¶ 48, 53).

The U.S. Supreme Court has acknowledged that employees "often enjoy every right guaranteed by the FMLA during part or all of an undesignated absence." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 85 (2002).  Assuming for the purposes of summary judgment that Mr. Benton was entitled to FMLA leave, Plaintiff has not shown that his situation falls outside this norm.  To succeed on an interference claim, Mr. Benton must demonstrate that he was denied a benefit guaranteed by the FMLA and thereby suffered a compensable injury.  *Id*. at 89; *Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006) (citing *Strickland*, 239 F.3d at 1207).  FMLA benefits do not include accommodation of an employee's disability, *see, e.g.*, *Henry v. Fulton County Bd. of Ed.*, 2006 WL 2927533 at * 4 (N.D. Ga. Oct. 10, 2006), and Mr. Benton has not indicated how Mercedes' requirement that he call in until his STD absence was approved deprived him of FMLA guarantees or caused him injury.  Because Plaintiff has not

introduced evidence that he was deprived of any benefit for which he can obtain a remedy under the FMLA, summary judgment will be granted on his interference claim(s).

        2.    Retaliation.

Plaintiff also argues that Mercedes retaliated against him for requesting and/or taking FMLA leave when it hired private investigators to conduct surveillance of his activities, and thereafter terminated his employment on September 19, 2005. (Doc. 23 at 16, 18-20.) Defendant contends that Mr. Benton never requested or applied for FMLA leave; private investigators were hired due to concerns about the validity of Plaintiff's STD claim; and Mr. Benton was ultimately terminated when a video showed him engaging in activities that appeared to be outside the scope of physician-imposed restrictions that were submitted to Mercedes as support for Plaintiff's STD claim and absence from work.

In order to succeed on a retaliation claim under the FMLA, a plaintiff must "demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. "When evaluating a FMLA

retaliation claim [in the absence of direct evidence], we use the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001).  In order to establish a prima facie case, "a plaintiff must show that he engaged in statutorily protected conduct, he suffered adverse action, and there is a causal connection between the protected conduct and the adverse action."  *Id.*; *see also Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).  "If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action." *BellSouth Telecomms., Inc.*, 273 F.3d at 1314.  "If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual."  *Id.*

Plaintiff testified he never applied for FMLA leave.  (Pl. Dep. at 250.) However, there is sufficient evidence in the record to create a genuine issue of fact as to whether Mercedes representatives treated Mr. Benton's time off work as FMLA leave.  (Davis Dep. at 46-47.)  Assuming without deciding that Mr. Benton has introduced sufficient evidence to establish a causal connection between his taking medical leave and the asserted adverse

actions of hiring private investigators[3] and ultimately terminating Plaintiff's

employment, this Court turns to the issue of pretext.

Defendant has introduced evidence that it hired private investigators

to conduct surveillance of Mr. Benton's activities in order to determine the

validity of his STD claim.   (Davis Dep. at 69-71.)   Mercedes' Medical

Specialist, Carol Davis, testified that she and the other members of the STD

committee discussed that Plaintiff's leave may have been excessive based

on the medical documentation he had provided the company.  (Davis Dep.

at 54-57.) Ms. Davis also testified that there were concerns about Plaintiff's

credibility.  (*Id*. at 61.)  These concerns included the fact that Mr. Benton

had previously played golf in a company tournament while out on disability

and that Plaintiff's car had been seen competing in a race while he was off

work for the current alleged disability.  (*Id*. at 61-65.)  Mercedes has also

introduced evidence that it subsequently terminated Mr. Benton because

surveillance video taken September 10, 2005, led Mercedes to conclude that

Plaintiff was violating physician-imposed restrictions while attempting to

---

[3]For the purposes of summary judgment, this Court also assumes that hiring
private investigators to conduct surveillance of an employee constitutes an "adverse
action."

collect STD benefits.  (Doc. 20 at Exs. 19-22; Davis Dep. at 78-79.)  This evidence is sufficient to meet Defendant's burden of production.  To avoid summary judgment, Mr. Benton must proffer sufficient evidence that these legitimate reasons are pretext for unlawful retaliation.

In his response memorandum, however, Plaintiff does not address the issue of pretext.  Aside from his assertions at his deposition that he did not drive a race car while on leave from work, Mr. Benton has not introduced any evidence that Mercedes representatives did not have a good faith suspicion that he competed in a car race on July 30, 2005.  In fact, Mr. Benton admits that his car did compete in the race in question, he registered the car, paid the entry fee, and signed his name to collect the prize money.  (Pl. Dep. at 236-40.)  Moreover, Mr. Benton admits that he engaged in the activities that were recorded in the surveillance video taken by private investigators on September 10, 2005, and considered by Mercedes in his termination.  (Pl. Dep. at 129-32.)  The surveillance video showed Mr. Benton shoveling and raking dirt, carrying and climbing a step ladder, and

operating a large piece of equipment.[4]   (Doc. 20 at Ex. 19.)   Although

Plaintiff questions Mercedes' right to "refute the diagnosis of two board

certified, licensed physicians" (Doc. 23 at 16), Plaintiff himself stated on

his short-term disability claim form that he was "unable to bend, squat,

strain, lift, stoop, or stand for period of time."  (Doc. 20 at Ex. 10.)

The crux of Plaintiff's argument appears to be that he was not aware

that his actions violated his physician-imposed restrictions; and, while there

were days he felt like he could go to work, his doctors said he should not.

(Pl. Dep. at 121-24, 182-83; Doc. 23 at 16-17.)  However, this Court is not

here to decide what Mr. Benton thought about his physical restrictions or

the necessity of his doctor's orders.  At this juncture, the role of this Court

is to examine his employer's intent when it made the decisions to take the

adverse actions alleged by Plaintiff in this case.

Another judge from the Northern District of Alabama previously held

that an employer may terminate an employee who has taken FMLA leave

"when the employer has good reason to conclude that the employee 'was

---

[4]This large piece of equipment has been referred to in depositions and
documentary evidence as a tractor, backhoe, and/or front loader.  This dispute is
not material.

not using his leave time for its intended purpose.'" *Williamson v. Parker Hannifin Corp.*, 208 F. Supp. 2d 1248, 1250 (N.D. Ala. June 21, 2002) (quoting *Moughari v. Publix Super Markets, Inc.*, 1998 WL 307454 at *2 (N.D. Fla. 1998), *aff'd without opinion* 170 F.3d 188 (11th Cir. 1999)); *see also Crouch v. Whirlpool Corp.*, 447 F.3d 984 (7th Cir. 2006) (holding that employer's honest suspicion that employee violated company policy by fraudulently obtaining disability leave foreclosed employee's FMLA claim); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325 (1st Cir. 2005).  Because Mr. Benton has not adduced sufficient evidence to rebut Mercedes' proffered legitimate reasons for hiring private investigators and ultimately terminating Plaintiff "based upon its good faith belief that he was not using his [STD or] FMLA leave for its intended purpose," *Williamson*, 208 F. Supp. 2d at 1250, summary judgment will be granted on Plaintiff's FMLA retaliation claim.

B.     Invasion of Privacy.

Plaintiff also alleges that Mercedes violated his right to privacy under Alabama law by wrongfully intruding on his physical solitude and seclusion. (Doc. 23 at 21.)  Mr. Benton argues that investigators trespassed on his

father-in-law's private property while videotaping his activities and those of his family.  Mercedes contends that it is entitled to summary judgment on Mr. Benton's claim because there is no evidence RAN's actions constitute a tort, and even if RAN violated Plaintiff's privacy, Mercedes cannot be held liable for that conduct because RAN investigators were independent contractors.

       1.    Agency.

In Alabama, it is a "well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor." *Lincoln Log Home Enters., Inc. v. Autrey*, 836 So. 2d 804, 806 (Ala. 2002) (quoting *Joseph Land & Co. v. Gresham*, 603 So. 2d 923, 926 (Ala. 1992)).  "The test to be applied in determining the existence of an agency relationship under the doctrine of respondeat superior is whether the alleged principal reserved a right of control over the manner of the alleged agent's performance." *Id.* (quoting *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1036 (Ala. 1986)).  "[A]gency may not be presumed. . . .  The party asserting the existence of an agency relationship has the burden of adducing sufficient evidence to prove its existence." *Id.* (internal quotes and citations omitted).

It is undisputed that Mercedes hired RAN to conduct surveillance of Plaintiff's activities while he was off work for alleged back pain and attempting to claim STD benefits. However, Plaintiff has not argued, nor has he set forth any evidence to support an allegation, that RAN's investigators acted as agents of Mercedes when they videotaped Mr. Benton outside his home. On the other hand, Mercedes has submitted the affidavit of Rick Needham, Director of Investigations for RAN, which states that Mercedes "did not instruct RAN in how to perform the specifics of its job."[5] (Doc. 20 at Ex. 17 ¶ 7.) Because Plaintiff has not met its burden to provide the Court with sufficient evidence that Mercedes reserved a right of control over the manner in which RAN's investigators conducted their surveillance,

---

[5]In his response memorandum, Plaintiff states that he cannot deny that RAN investigators were independent contractors because he does not have copies of the contracts between Mercedes and RAN. (Doc. 23 at 8 ¶ 71.) Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Plaintiff never made a motion to compel this alleged evidence while discovery was conducted in this matter, nor has he submitted a Rule 56(f) affidavit asking that Defendant's motion for summary judgment be stayed because continuing discovery is necessary. Plaintiff's statement that he does not have a document(s) that may or may not exist is insufficient to create a genuine issue of material fact.

Mercedes cannot be held liable for the alleged wrongful actions of RAN investigators.

        2.    Conduct.

To the extent Plaintiff argues that Mercedes is liable for invasion of privacy through the sole act of hiring private investigators to conduct surveillance of Mr. Benton, this Court finds that Defendant is entitled to judgment as a matter of law.  It is undisputed that Plaintiff was seeking STD benefits at the time Mercedes contracted with RAN.  The Alabama Supreme Court has held that "plaintiffs making personal-injury claims must expect reasonable inquiry and investigation to be made of their claims and that to this extent their interest in privacy is circumscribed." *I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d 685, 689 (Ala. 2000) (internal quotes omitted); *see also Johnson v. Corporate Servs., Inc.*, 602 So. 2d 385, 387 (Ala. 1992).  Plaintiff's degree of disability was central to his STD claim.  Therefore, he "should have expected a reasonable investigation regarding his physical capacity." *Jones*, 780 So. 2d at 689; *see also Johnson*, 602 So. 2d at 388.

Moreover, even if RAN's investigators acted as agents of Mercedes while performing surveillance of Mr. Benton, this Court agrees with

Defendant that there is insufficient evidence to conclude that their actions constitute a tort.  Because the purpose of the investigation was, as just discussed, legitimate, this Court need only consider "whether the means used in the investigation was offensive or objectionable." *Jones*, 780 So. 2d at 689; *see also Johnson*, 602 So. 2d at 388.

RAN's investigators videotaped Plaintiff "while [he] was outside his home, in his front yard, where he was exposed to public view." (Doc. 23 at 8-9.) *See Jones*, 780 So. 2d at 689; *Johnson*, 602 So. 2d at 388.  In fact, Mr. Benton emphasizes that "there is no obstruction of sight from [P]laintiff's front yard to the public roads." (Doc. 23 at 8-9.) Moreover, it is undisputed that "[a]t no time did [RAN's investigators] enter or tape activities conducted inside [Plaintiff's] home." (*Id*. at 9 ¶ 78.) *See Jones*, 780 So. 2d at 689; *Johnson*, 602 So. 2d at 388.  Given similar circumstances, the Alabama Supreme Court has concluded that because such activities "could

have been observed by any passerby,"[6] such intrusion is not wrongful nor

actionable.  *Jones*, 780 So. 2d at 689-90; *Johnson*, 602 So. 2d at 388.

For these reasons, summary judgment will be granted on Plaintiff's

invasion of privacy claim.

V.      Conclusion.

In accordance with the rationale outlined above, Defendant's motion

for summary judgment is due to be granted in all respects.  A separate

order in conformity with this opinion will be entered.

Done this 17th day of January 2007.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297

---

[6]Although Plaintiff adamantly contends that the investigators trespassed on his father-in-law's property, he has not presented sufficient admissible evidence to create a genuine question of fact on this issue.  Mr. Benton testified that he found an area with several limbs "chopped off," but he admitted that he had no knowledge where the surveillance came from, and it was entirely his "speculation" that the area he found was where the investigators filmed.  (Pl. Dep. at 149-52.)  Moreover, even if investigators videotaped Plaintiff from his father-in-law's property, it remains undisputed that Mr. Benton's actions could be observed by all passersby on the public road that divided the two properties.  Because he "exposed [himself] to public observation," Mr. Benton simply "is not entitled to the same degree of privacy [t]hat [he] would enjoy within the confines of [his] home."  *Alabama Elec. Co-Operative, Inc.v. Partridge*, 225 So. 2d 848, 851 (Ala. 1969).